MOTT'S REALTY CORPORATION ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF WINDSOR ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued March 3—decided April 1, 1965

*Donald J. Deneen*, with whom was *Thomas J. O'Malley*, for the appellants (plaintiffs).

*Norman J. Bernstein*, for the appellee (named defendant).

*Robert N. Shea*, with whom was *Robert L. Brooks*, for the appellees (defendants Christensen et al.).

MURPHY, J.  The named plaintiff and Jerome S. Goldenberg appealed to the Court of Common Pleas from the action of the defendant commission in

changing, under certain conditions, the zone and the comprehensive plan of development of 11.42 acres of land on Meadow Road in the Wilson section of Windsor from agriculture to business B-2. The court concluded that neither of the plaintiffs was an aggrieved person. From the judgment dismissing the appeal, the plaintiffs have appealed to this court.

No evidence was presented in the trial court to prove the manner in which Goldenberg claimed to be aggrieved. The limited finding recites that he owns property just northerly of the named plaintiff's property. The court properly concluded that Goldenberg did not prosecute his appeal and was not an aggrieved party. The named plaintiff owns property on Windsor Avenue which is leased to a retail business and is about 800 to 1000 feet "as the crow flies" from the property for which the change of zone was sought. No other evidence was produced to show that the named plaintiff was specially and injuriously affected in its property rights or other legal rights. At best, the evidence introduced by the named plaintiff would create an inference that competition with its lessee's operation might result if the proponents of the change in zone devoted the site to retail business. That would not be sufficient to qualify the named plaintiff as an aggrieved person. *Whitney Theatre Co.* v. *Zoning Board of Appeals,* 150 Conn. 285, 287, 189 A.2d 396, and cases cited.

The plaintiffs also advance the claim that they are aggrieved because the defendant commission is changing the comprehensive plan of development as well as the zone of the property in question. They cite *Mills* v. *Town Plan & Zoning Commission,* 145 Conn. 237, 241, 140 A.2d 871, as authority for this proposition. The property under consideration

constitutes the major portion of the tract in that *Mills* case. The principal plaintiffs therein, Marguerite E. Mills and The Park Regional Corporation, had unsuccessfully sought in 1956 to have their properties zoned for business. See *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 134 A.2d 250; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 136 A.2d 785. Their appeals were pending in this court at the time that the second *Mills* case was before the trial court.

The defendant commission adopted what it termed a comprehensive plan of development in 1955 under what is now § 8-23 of the General Statutes. The word "comprehensive" is superfluous, and since it causes confusion with the "comprehensive plan" of zoning under § 8-2, its use should be abandoned. Actually, a plan of development is properly called a "master plan" and will hereinafter be referred to as such. See *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822. The master plan is the planning commission's recommendations of the most desirable use of land. Where, as in Windsor, the same commission functions in both planning and zoning, it is logical to assume that, when zoning changes are sought, the action of the commission would be guided by its own recommendations in the master plan, i.e., the manner in which the commission believes that the municipality should achieve coordinated development. In its resolution of February 2, 1956, denying Miss Mills's application in the first *Mills* case, the commission predicated its action upon the existence of twenty-five acres of unused property zoned for business in the Wilson area which was sufficiently adequate to take care of local shopping needs for a number of years, and on the adequate provision in the master plan for addi-

tional shopping areas. A-356 Rec. & Briefs, back of 295; see also A-363 Rec. & Briefs, back of 172. In the *Park Regional* case, supra, 679, 681, the commission by a majority vote on May 9, 1956, favored the zone change for the plaintiff's property to business in accordance with the original designation of it for a regional shopping center on the master plan adopted by the commission in 1955, but the resolution failed of passage since, under the special act authorizing zoning in Windsor, a unanimous vote was required on that application. 21 Spec. Laws 277, § 5. On March 7, 1956, the commission denied the application of the Fusco-Amatruda Company for a change in the master plan and for a change in zone from agriculture to business for the Christensen-Jepsen property involved in the present case. The reasons given were substantially the same as those advanced in the first *Mills* case. A-363 Rec. & Briefs 172.

The commission, despite its reliance on the projections of the master plan in the three situations to which we have just referred, attempted to reverse its position within a matter of weeks, when on May 9, 1956, after informal meetings and an agreement with representatives of the Fusco-Amatruda Company, the commission granted a new application for a change of zone to business on the Christensen-Jepsen tract. *Mills v. Town Plan & Zoning Commission,* 145 Conn. 237, 240, 241, 140 A.2d 871. Upon that appeal, we held that we could not find error as a matter of law in the conclusion of the trial court that the plaintiffs in that case were aggrieved. Their legal rights to have their properties zoned for business use would have been seriously curtailed by the adherence of the commission to the master plan in deciding their applications for business zones

in areas not designated as such in that plan. No legal rights of the plaintiffs in this case are so affected as to bring them within the limited rule set forth in the second *Mills* case. So far as the second *Mills* case holds that a change in the comprehensive plan of zoning necessarily creates an aggrievement, ipso facto, it is overruled. Any change in the zone of a district necessarily results in a change in the comprehensive plan, i.e., the plan to be found in the zoning regulations and the maps of the zones adopted pursuant to them.

There is no merit to the other contention of the plaintiffs that the possibility of flooding on the Christensen-Jepsen property would make them aggrieved persons. There is no reason therefore for further consideration of this appeal.

There is no error.

In this opinion the other judges concurred.