[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These are two appeals brought by plaintiffs Steven and Nan Wisensale, Patrick and Mabel Soohoo, Frank McDonald, Donald and Janine King, John and Vera Conway, against the Commission on the City Plan of the City of Norwich and others from the decision of such Commission in approving a special permit and site plan to enable defendant Sunnywood Convalescent Home, Inc., d/b/a Fairlawn Convalescent Home, to proceed with an eighty-two bed convalescent facility in an MF-8, multi-family residence district, within the City of Norwich.
All parties necessary to the action have been joined. All public notices required to have been given have been timely published and no issues concerning jurisdictional defects have been raised or noted. CT Page 6639
Plaintiffs claim to be aggrieved by the decisions appealed from. Whether or not a party is aggrieved so as to be entitled to appeal to court is a jurisdictional question which must be decided by the Court based upon the evidence and the conclusions reasonably drawn from such evidence. Bell v.Planning and Zoning Commission, 174 Conn. 493, 495-96 (1978).
From the evidence, it is concluded that the plaintiffs are aggrieved and have standing to prosecute this appeal.
In reviewing an application for a special permit and site plan, defendant Commission was performing an administrative function. Section 1.6, Fuller, Land Use Law and Practice (1993). When acting in an administrative capacity, the Commission has limited discretion. It does have authority to resolve debatable questions of fact and when on appeal the issue is whether the Commission's decision on factual questions is reasonably supported by the record. Deference to the Commission's action applies only to factual determinations, however, legal questions are for the Court to determine. Section 33.3, Id.
In deciding whether or not defendant Commission acted illegally in the decisions appealed from, the Court cannot substitute its judgment for the wide and liberal discretion on factual matters vested in the local Commission. So long as it appears that the defendant Commission has honestly and reasonably exercised its judgment, the Court must be cautious about disturbing its decision. Kutcher v. Planning and ZoningCommission, 138 Conn. 705, 710 (1952), cert. den.239 Conn. 949.
The following background information appears to be uncontroverted.
For some time prior to the start of this action, defendant Fairlawn, Inc. operated a forty-five bed convalescent facility on two lots fronting Rockwell Terrace in Norwich. Fairlawn or Sunnywood also owned two multi-family dwellings in the same block. Neither of these two multi-family structures had previously been the subject of a variance, special permit or special exception to support the convalescent facility.
The convalescent facility is a permitted use in an CT Page 6640 MF-Zone but only by special permit. Fairlawn's facility had been in operation for forty years.
On a number of prior occasions, Fairlawn submitted applications to the appropriate authority seeking to expand its facility. Plaintiffs and others opposed these planned expansions and were successful in persuading the authority to reject the applications.
On or about January 30, 1995, a new application for a special permit and site plan to allow a scaled-down version of the expansion previously sought was filed on behalf of Fairlawn.
The proposed plan would allow construction of a new building with a footprint in excess of 13,000 square feet to service eighty-two patients to replace the existing facility. There would be a three-story structure with one story below grade level. An existing multi-family structure would be converted to staff housing and a two-story house would be converted to employee day care and staff housing.
Public hearings at which the applicants presented their plan and those in opposition were heard, were scheduled and held.
On February 28, 1995, defendant Commission approved the application with modification and plaintiffs instituted the present appeal.
In prosecuting their appeal, plaintiffs have raised four separate issues. Two of its issues are dispositive of the appeal.
Two of plaintiffs' claims are that the decision appealed from violated the provisions of § 8.1.2(d) of the zoning regulations. This section which allows the Commission to issue special permits for certain uses provides as follows:
 (d) Convalescent and nursing homes, provided that the lot area is not less than forty-five hundred (4500) square feet for each person accommodated, including patients and employees, except that where such facility is connected to a public CT Page 6641 sanitary sewer system the minimum lot area requirement shall be reduced to fifteen hundred (1500) square feet for each person so accommodated; and no building is located closer than fifty (50) feet to an existing or proposed residence.
 I
Plaintiffs' first claim is that the site plan and the special permit, as granted, violate the above section of the regulations because the multi-family buildings incorporated into the plan will stand within fifty feet of adjacent residences.
Testimony at the public hearing indicated that there were two multi-family residences owned by Fairlawn or its principal which would become part of the proposed convalescent facility and that these buildings were within 50 feet of existing residences.
Section 8.1.2(d) specifically provides that no building of a convalescent or nursing home could be located closer than 50 feet to an existing residence. There was evidence that one such building was approximately 39.85 feet from the Wisensale residence and 35 1/2 feet from another residence. Testimony was that the other building was less than 50 feet from another existing residence.
The Commission was aware that the buildings were less than the 50 feet required by the regulations, but concluded that since they were preexisting, approval would be in accordance with the regulations.
Defendants argue that the buildings were prior nonconforming structures and since the buildings were not being moved closer to the residences, the Commission was correct.
A review of the zoning regulations, particularly § 12.1, indicate that the buildings were in fact conforming structures in an MF-8 district. They become nonconforming only when incorporated into the convalescent facility.
Petruzzi v. Zoning Board of Appeals, 176 Conn. 479
(1979), and Seaside Properties v. Zoning Board of Appeals,
CT Page 664217 Conn. App. 638 (1988), are both cited by defendants in support of their position. Both of these cases, however, involve valid prior nonconforming structures with a change in permitted uses. The situation here is different. Here, we have prior conforming structures being changed to nonconforming and to a use permitted, not as of right, but by special permit.
In acting on the special permit and the site plan, defendant Commission was acting in an administrative capacity and its function was to determine whether the proposal satisfied the conditions set forth in the regulations. Farinav. Zoning Board of Appeals, 157 Conn. 420, 422 (1969).
The conditions set forth in the regulations were not satisfied since buildings designated as a part of the convalescent facility were within the minimum distances from residences required by the regulations.
In approving the application, which was not in conformance with the regulations, the Commission exceeded its authority.
 II
Chapter 17 of the zoning regulations entitled "Site Plan Review and Special Permits" sets forth what must be submitted for site plan review. Section 17.1.2 contains general considerations for site plan review. The section contains general considerations with respect to landscaping and screening as well as character and appearance of the site. Section 17.1.3 states that: "In order to ensure consistency with the above-noted consideration and these regulations in general, the following items shall be provided on the site plan." Subsection (f) requires that the location of all existing trees ten (10) inches or more in diameter at four and one-half (4 1/2) feet above ground level be included on the site plan.
Testimony at the public hearing indicated that there were a considerable number of trees within the site and that many of these were ten inches or more in diameter at four and one-half feet. The location of these trees was not contained on any of the maps or other documents submitted by the applicants. CT Page 6643
The Commission recognized this error but attempted to rectify the deficiency by requiring the location of such trees to be included on a modified site plan to be filed after approval. This meant that the Commission did not, and could not, have considered the location of these trees and the effect of the proposed facility on the trees and the area prior to approving the site plan and special permit.
Considering the obligations resting on the Commission to only grant special permits subject to appropriate safeguards in harmony with the general purpose of the regulation as required by § 8.1.2 as well as the factors set forth in § 17.1.2 defendant Commission exceeded its authority in approving the application which did not conform to the regulations.
 III
Plaintiffs have raised other claims. One such claim is that the square footage required for each patient and employee accommodated in the facility has not been met. This question revolves around the word "accommodated" as used in § 8.1.2(d). Without elaboration, it is found that defendant Commission was not arbitrary, illegal or unreasonable in concluding that the required footage was adequate.
It was also claimed by plaintiffs that the decision of the Commission was improper because of the participation of Commissioners Wilson and Way. Plaintiffs claim that these Commissioners illegally predetermined approval of the site plan and special permit. Evidence of any improper predetermination was not persuasive and it must be concluded that plaintiffs have not met their burden of proof on this claim.
Accordingly, having found that defendant Commission exceeded its authority and acted illegally in approving the special permit and site plan, such decision is reversed.
PURTILL, J.